UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN LOPEZ, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICOLD LOGISTICS, LLC, a Delaware company,<br><br>Defendant. | No. 1:20-cv-00308-NONE-EPG<br><br>ORDER APPROVING JOINT STIPULATION OF SETTLEMENT, DISMISSING PLAINTIFF'S INDIVIDUAL CLAIMS WITH PREJUDICE, DISMISSING CLASS CLAIMS WITHOUT PREJUDICE, AND DIRECTING CLERK OF COURT TO ASSIGN DISTRICT JUDGE AND CLOSE CASE<br><br>(Doc. No. 17) |

Presently before the court is the parties' stipulation for court approval of their agreement to settle plaintiff's individual claims under the Fair Labor Standards Act ("FLSA") and California law and to dismiss plaintiff's individual claims with prejudice. (Doc. No. 17.) Though plaintiff Justin Lopez ("plaintiff") initiated this putative class action, plaintiff does not now seek to conditionally certify a collective or class action, and the parties have stipulated to dismiss any class claims without prejudice. (*Id.* ¶ 14.) Pursuant to the parties' settlement agreement and Federal Rules of Civil Procedure 23 and 41, the parties seek dismissal of this action in its entirety, with the court retaining jurisdiction for the sole purpose of enforcing their settlement agreement. (*Id.*) The court noted that the parties' stipulation lacked the requisite information needed to determine whether the overall settlement agreement is fair and reasonable and therefore directed the parties to file supplemental briefing. (Doc. No. 18.) The parties filed a joint supplemental

1

brief on July 9, 2021.  (Doc. No. 19.)  For the reasons set forth below, the court will grant the parties' joint stipulation of settlement.

**BACKGROUND**

Defendant employed plaintiff as a non-exempt hourly warehouse worker from approximately 2006 to 2018.  (Doc. No. 1 at 22 ¶ 6, 23 ¶ 9.)  On February 22, 2019, a putative class action titled *Contreras v. Americold Logistics, LLC* ("*Contreras*"), was filed against defendant in the San Bernardino County Superior Court alleging violations of California wage and hour laws.  (Doc. No. 17 ¶ 3.)  Defendant removed the *Contreras* action to U.S. District Court for the Central District of California on April 10, 2019, but subsequently, on May 2, 2019, the named plaintiff in *Contreras* filed a second complaint against defendant in the San Bernardino County Superior Court alleging wage and hour violations under the Private Attorneys General Act ("PAGA").  (*Id.* ¶¶ 4–5.)  On June 17, 2019, pursuant to a joint stipulation, the district court authorized the named plaintiff in *Contreras* to file a first amended complaint, which effectively incorporated the PAGA claims into the state law claims.  (*Id.* ¶ 6.)  Plaintiff in this case was a putative class member in the *Contreras* action.  (*Id.* ¶ 8.)

On January 16, 2020, plaintiff initiated the present putative class action in the Stanislaus County Superior Court asserting the same claims as those brought in the *Contreras* action.  (Doc. Nos. 1, 17 ¶ 8.)  Thereafter, on February 27, 2020, defendant removed the pending action to this federal court.  (Doc. No. 1.)

During the pendency of this action, the parties in *Contreras* ultimately reached a class action settlement, and the district court granted their motion for preliminary approval of the class action settlement on September 17, 2020.  (Doc. No. 17 ¶¶ 7–8.)  Plaintiff received notice of the settlement, but he chose to opt out of it and was the only putative class member to do so.  (*Id.* ¶ 8.)  The *Contreras* class action settlement was approved by the district court on March 11, 2021, and as a result, "all claims of the class members in the *Lopez* action were thereby resolved."  (*Id.*; *see* Ex. C, Pl.'s RJN, Doc. No. 19-1 at 73–77.)  On the same day, counsel in the present action entered into a verbal agreement to settle this case on behalf of plaintiff and notified this court that a settlement was reached on March 18, 2021.  (Doc. No. 17 at ¶ 9.)

On April 23, 2021, the parties filed a stipulation for approval of their settlement agreement. (Doc. No. 17.) The settlement agreement provides that this action will be dismissed in its entirety, with plaintiff's individual claims being dismissed with prejudice, and in consideration defendant will pay a gross settlement amount of $16,000. (*Id.* ¶¶ 12, 14.) The gross settlement amount consists of three separate payments: (1) $1,000 to plaintiff toward settlement of his FLSA claim; (2) $6,000 to plaintiff toward settlement of his state law claims; and (3) $9,000 to plaintiff's counsel for attorneys' fees and costs. (*Id.* ¶ 12.) The parties seek final court approval of the FLSA portion of the settlement only. (*Id.* ¶ 32.)

In support of the parties' joint stipulation for approval of their settlement, plaintiff filed declarations from his counsel, Costa Kerestenzis and Sarah Kanbar, in which both attorneys explain why they believe that the parties' settlement is fair and reasonable. (Doc. Nos. 17-1, 19-2.) In her declaration, attorney Kanbar also describes her experience litigating class actions as well as the experience of attorney Kerestenzis in wage and hour litigation and provides summaries of her and attorney Kerestenzis' billing records and expenses for litigating this action. (Doc. No. 19-1 ¶¶ 5–6, 19–21.)

**LEGAL STANDARD**

Under the FLSA, an employee may file a civil action against an employer that fails to adhere to the FLSA's guarantees. 29 U.S.C. § 216(b); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013) ("The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract."). Because an employee cannot waive claims under the FLSA, the claims may not be settled without supervision of either the Secretary of Labor or a district court. *See Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Beidleman v. City of Modesto*, No. 1:16-cv-01100-DAD-SKO, 2018 WL 1305713, at *1 (E.D. Cal. Mar. 13, 2018); *Yue Zhou v. Wang's Rest.*, No. 05-cv-0279 PVT, 2007 WL 2298046, at *1 n.1 (N.D. Cal. Aug. 8, 2007). In evaluating whether to approve an agreement to settle an individual's FLSA claims, one district court explained, "[i]n reviewing a private FLSA settlement, the court's obligation is not to act as caretaker but as gatekeeper; it must ensure that private FLSA settlements are appropriate given the FLSA's purposes and that such

1 settlements do not undermine the Act's purposes." *Goudie v. Cable Commc'ns, Inc.*, No. 08-cv-
2 507-AC, 2009 WL 88336, at *1 (D. Or. Jan. 12, 2009).

3        The Ninth Circuit has not established criteria for district courts to determine whether an
4 FLSA settlement should be approved. *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-cv-
5 05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). Rather, district courts in this
6 circuit routinely apply the Eleventh Circuit standard, which looks to whether the settlement is a
7 fair and reasonable resolution of a bona fide dispute. *Id.*; *see also Lynn's Food Stores, Inc. v.
8 United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Milburn v. PetSmart, Inc.*, No. 1:18-cv-
9 00535-DAD-SKO, 2019 WL 1746056, at *4 (E.D. Cal. Apr. 18, 2019); *Selk v. Pioneers Mem'l
10 Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016); *Nen Thio v. Genji, LLC*, 14 F.
11 Supp. 3d 1324, 1333 (N.D. Cal. 2014). "A bona fide dispute exists when there are legitimate
12 questions about the existence and extent of Defendant's FLSA liability." *Selk*, 159 F. Supp. 3d
13 at 1172 (internal quotation marks and citations omitted). A court will not approve a settlement
14 when there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because
15 doing so would shield employers from the full cost of complying with the statute. *Id.*

16        District courts in this circuit have also taken note of the "unique importance of the
17 substantive labor rights involved" in settling FLSA actions and adopted a "totality of
18 circumstances approach that emphasizes the context of the case." *Id.* at 1173. With this
19 approach, a "district court must ultimately be satisfied that the settlement's overall effect is to
20 vindicate, rather than frustrate, the purposes of the FLSA." *Id.* Settlements that reflect a fair and
21 reasonable compromise of issues that are actually in dispute may be approved to promote the
22 efficiency of encouraging settlement of litigation. *McKeen-Chaplin v. Franklin Am. Mortg. Co.*,
23 No. 4:10-cv-05243-SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).

24 /////
25 /////
26 /////
27 /////
28 /////

# ANALYSIS[1]

## A. Plaintiff's Request for Judicial Notice

Plaintiff requests that the court take judicial notice of the following court documents from the *Contreras* case: (1) the memorandum of points and authorities in support of preliminary approval of class action settlement in *Contreras* (Exhibit A); (2) the memorandum of points and authorities in support of final approval of class action settlement in Contreras (Exhibit B); and (3) the order granting final approval of class action settlement (Exhibit C). (*See* Doc. No. 19-1.) Defendant has not objected to plaintiff's request.

A court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The court may also take judicial notice of matters of public record. *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001). When a court takes judicial notice of a document, "it may do so not for the truth of the facts recited therein, but for the existence of the [record], which is not subject to reasonable dispute over its authenticity." *Id.* at 690 (internal quotation marks and citation omitted). Here, the court will take judicial notice of the documents filed in the *Contreras* case. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.") (citation omitted).

## B. FLSA Settlement

### 1. Bona Fide Dispute

Here, plaintiff alleges that he was not compensated for donning and doffing protective gear before and after his shift. (Doc. No. 19 at 4.) According to the parties, "[i]t should be noted

---

[1] Unlike the settlement of plaintiff's FLSA claim, the portion of the settlement allocated to plaintiff's individual state law claims does not require court approval because no class has been certified and the parties have stipulated to dismiss the putative class claims *without prejudice*. (Doc. No. 17 ¶ 32); *see* Fed. R. Civ. P. 23(e), Advisory Committee Notes (2003 amendment) (requiring "approval only if the claims, issues, or defenses *of a certified class* are resolved by settlement, voluntary dismissal, or compromise.") (emphasis added); *see also Voluntary Dismissal*, MCLAUGHLIN ON CLASS ACTIONS § 6.1 (17th ed.) ("[W]here no class has been certified, voluntary dismissal or settlement of a putative class action in federal court is governed not by Rule 23, but by Rule 41 of the Federal Rules of Civil Procedure . . .").

that while Plaintiff did not allege an FLSA violation in the operative Complaint, the donning and doffing claim is compensable under both the federal and State law." (*Id.* at 3; *see also* Kanbar Decl., Doc. No. 19-2 ¶ 12 (stating that plaintiff "did not make any claim under the FLSA because all of his claims were covered under applicable state law.").)  Defendant maintains, however, that there was "a facially-neutral rounding policy when compensating employees for donning and doffing." (Kanbar Decl., Doc. No. 19-2 ¶ 14.)  According to plaintiff's counsel, "Defendant's Counsel explained that in conducting discovery in *Contreras*, there was insufficient evidence to establish full liability against Defendant, including the existence of a facially-neutral rounding policy when compensating employees for donning and doffing." (Kanbar Decl., Doc. No. 19-2 ¶ 14.)  In the motion for preliminary approval of class action settlement in *Contreras*, the parties in that case provided the following:

> Although the [defendant's] rounding policy itself is facially neutral, Plaintiff contends the additional policies resulted in the rounding policy [not] being applied in a fair and neutral manner.  Plaintiff asserted that [defendant]'s rounding policy essentially encompassed "only rounding down" so that only the employer/[defendant] benefits from it.  *Silva v. See's Candy Shops* (2016) 7 Cal. App. 5th 235, 249 (*See's Candy II*).  If and when applied in this manner, the end result, as Plaintiff claims, was an alleged amount of time in which Class Members were undercompensated.  Khoury Decl. ¶16.
>
> Plaintiff contends that Defendant failed to pay for pre- and post-shift work, including donning and doffing time.  Employees at Plaintiff's location were allegedly required to report to a pre-start meeting, which began at the beginning of the scheduled shift.  Plaintiff alleges that upon completion of the pre-start meeting, employees then immediately started working.  To [] be ready for the pre-start meeting, Class Members were required to change into the proper refrigeration cold gear, and to have performed their fork lift inspection prior to the start of their prestart meeting.  Plaintiff claims this required pre-shift work typically took approximately 30 minutes.  Khoury Decl. ¶17.
>
> [Defendant] disputes the entirety of Plaintiff's contentions.  [Defendant] asserts that its rounding process is[] facially neutral and does not favor the Company.  Statistically, the punches more often round forward, meaning that at the beginning of the day they facially favor the employer, whereas at the end of the day the rounding favors the employees in terms of minutes gained/lost.  Moreover, [defendant] asserts that Plaintiff has not presented evidence that a majority of warehouse employees actually worked after punching before their scheduled shifts.

(Ex. A, Pl.'s RJN, Doc. No. 19-1 at 14–15; *see also* Kanbar Decl., Doc. No. 19-2 ¶ 8 (stating the

claim in *Contreras* that "Defendant failed to pay for all hours worked due to an unlawful rounding policy for donning and doffing time" is, in part, "the thrust of the operative Complaint in the instant case").)

The court has considered the parties' arguments and agrees that a bona fide dispute exists as to defendant's liability under the FLSA. Approval of the parties' proposed settlement agreement in this case thus would not thwart the purposes of the FLSA. The court therefore proceeds to consider the fairness and reasonableness of the proposed settlement.

### 2. Whether the Proposed FLSA Settlement is Fair and Reasonable

To determine whether a FLSA settlement is fair and reasonable, the court evaluates the "totality of the circumstances" within the context of the purposes of the FLSA. *Slezak v. City of Palo Alto*, No. 16-cv-03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017). Courts in this circuit have considered the following factors when determining whether a settlement is fair and reasonable under the FLSA: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *See Selk*, 159 F. Supp. 3d at 1173; *Slezak*, 2017 WL 2688224, at *3. The court addresses each of these factors below.

#### a. *Plaintiff's Range of Possible Recovery*

Under the terms of the settlement agreement, defendant will pay plaintiff a total of $1,000 toward the settlement of plaintiff's FLSA claim. (Doc. No. 17 ¶ 12(a).) Plaintiff estimates that the maximum recovery for his donning and doffing claim would be approximately $3,500, making the amount of $1,000 a 28 percent recovery of plaintiff's claim. (Doc. No. 19 at 4; Kanbar Decl., Doc. No. 19-2 ¶¶ 12–13.) Had he not opted out of the *Contreras* settlement, "[p]laintiff would have been entitled to $1,588.59 for both his donning and doffing claim and his State law claims." (Doc. No. 19 at 4 (citing 29 U.S.C. § 254; Kanbar Decl., Doc. No. 19-2 ¶ 10).) Because it appears that plaintiff will be compensated in an amount more than what he would have received under the *Contreras* settlement, consideration of this factor weighs in favor of approving

7

the settlement agreement.

     b.  *The Stage of the Proceedings and the Amount of Discovery Completed*

  The court is also required to evaluate the stage of the proceedings and the amount of discovery completed to ensure that "the parties carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014).  Consideration of this factor will weigh in favor of approval if the parties have sufficient information to make an informed decision regarding settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

  Here, although no formal discovery was conducted in this case, plaintiff's counsel "reviewed the filings and discovery in *Contreras*."  (Kanbar Decl., Doc. No. 19-2 ¶ 11.)  The parties here relied on the "extensive discovery [that] was conducted in *Contreras*, a case that alleges identical claims and causes of action," and "information about [plaintiff's] employment was passed between the parties informally."  (Doc. No. 19 at 5 (citing Kanbar Decl., Doc. No. 19-2 ¶¶ 10–11).)  Significantly, the discovery from the *Contreras* case revealed that "Defendant raised defenses casting doubt as to the strength of Plaintiff's claims."  (*Id.* (citing Kanbar Decl., Doc. No. 19-2 ¶¶ 12–15).)  Under these circumstances, the court finds that the parties had sufficient information to reach an appropriate settlement.

     c.  *The Seriousness of the Litigation Risks Faced by the Parties*

  Courts favor settlement where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015).  Here, plaintiff claims that "[t]here is a significant likelihood that [plaintiff] may not prevail on his claim or recover less at trial" in light of the defenses raised by defendant to plaintiff's claim that he was not compensated for time spent donning and doffing.  (Doc. No. 19 at 6; *see also* Kanbar Decl., Doc. No. 19-2 ¶ 14 (defendant maintaining that there was "a facially-neutral rounding policy when compensating employees for donning and doffing.").)  Accordingly, because there is a substantial risk that plaintiff would not prevail on his claims at trial, consideration of this factor weighs in favor of approval of the parties' FLSA settlement.

d.  *The Scope of Any Release Provision in the Settlement Agreement*

"A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." *Slezak*, 2017 WL 2688224, at *5. Expansive release of claims would allow employers to unfairly extract valuable concessions from employees using wages that they are guaranteed by statute. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010) ("An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled."). Courts are therefore hesitant to approve settlement agreements that release claims that are not directly related to the allegations brought in the case. *See Daniels v. Aeropostale W., Inc.*, No. C 12-05755 WHA, 2014 WL 2215708, at *4 (N.D. Cal. May 29, 2014) (rejecting proposed FLSA settlement in which 60 percent of collective-action opt-in members did not receive any payment in exchange for a release provision that extended beyond the FLSA limits of the case); *McKeen–Chaplin*, 2012 WL 6629608, at *5 (rejecting a FLSA settlement in part because the release provision exceeded the breadth of allegations in the action and released unrelated claims that plaintiffs may have against defendants).

The parties' settlement agreement in this case contains, in part, the following release provision:

> "Released Claims" means any and all claims, known and unknown, asserted and unasserted, that Plaintiff had or may have had against Defendant or any of the Released Parties. Such claims include, but are not limited to: breaches of contract, whether written, oral or implied; violations of any public policy; tort claims, including but not limited to intentional infliction of emotional distress and negligent infliction of emotional distress, defamation, misrepresentation, and fraud; retaliation claims; common law claims; claims arising from or related to Plaintiff's employment with Defendant, and any other claims for damages, costs, fees, or other expenses, including attorneys' fees; and any violations of the following statutes, laws, and regulations: Fair Labor Standards Act, 29 U.S.C. §§ 200, *et seq.,* Title VII of the Civil Rights Act of 1964, as amended; The Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; The Americans with Disabilities Act of 1990, as amended; The Age Discrimination in Employment Act of 1967, as amended; the Older Workers Benefit Protection Act; the Employment Retirement Income Security Act of 1974, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; the Family and Medical Leave Act of 1993, as amended; the California

> Fair Employment and Housing Act – Cal. Gov't Code § 12900 *et seq.*; the California Family Rights Act – Cal. Gov't Code § 12945.2 *et seq.*; the California Unruh Civil Rights Act – Civ. Code § 51 *et seq.*; the California Whistleblower Protection Law – Cal. Lab. Code § 1102.5; the California Occupational Safety and Health Act, as amended – Cal. Lab. Code § 6300 *et seq.*, and any applicable regulations thereunder; the California Business and Professions, Civil, Government and Labor Code; the Labor Code Private Attorneys General Act of 2004 – Cal. Lab. Code § 2698 *et seq.*; and any other federal, state, or local civil employment law, statute, regulation, or ordinance capable of being released by Plaintiff, excluding any claims that cannot be released as a matter of law.

(Doc. No. 17 ¶ 11.) According to the parties, plaintiff agrees to release defendant "of all known and unknown claims that arise from the same operative facts outlined in the original Complaint." (Doc. No. 19 at 6.) Furthermore, the parties contend that the "Unknown Claims" or "Unknown Released Claims" are explicitly limited "to the specific claims at issue in the Complaint." (*Id.*; *see* Doc. No. 17 ¶ 11 (defining such claims to mean "any Claim, which arises out of the wage and hour and payroll practices alleged or which could have been alleged under the facts pled in the Complaint . . .").)

Contrary to the parties' assertions, the court finds that the settlement agreement includes a broad release provision that is not limited to a release of plaintiff's FLSA claims. For example, the definition of "Released Claims" includes breach of contract and tort claims, neither of which were alleged in the present action. Such a broad release provision usually weighs against approval of the parties' settlement. However, in the court's view, the inclusion of such a broad release provision in this case does not preclude approval of the settlement agreement when considering the totality of the circumstances. Most importantly here, the release pertains solely to plaintiff, not to any putative class or collective members, because the parties have agreed to settle plaintiff's *individual* claims only. Moreover, it appears clear that plaintiff is not unconditionally entitled to the full $7,000 he would be paid under the settlement. Rather, as shown by his own calculations, he would be entitled to less than a third of that amount. Thus, under the proposed settlement, plaintiff is in essence being compensated for agreeing to a broad release of claims he might have against his former employer.

/////

    e.  *The Experience and Views of Counsel and the Opinion of Plaintiff*

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, *5 (N.D. Cal. July 11, 2014). Here, plaintiff's counsel has considerable experience in litigating and settling labor and employment class action cases and has represented to the court that this settlement is fair, reasonable, and in the best interests of plaintiff. (Kanbar Decl., Doc. No. 19-2 ¶¶ 5–7, 17.) In addition, plaintiff had an opportunity to review the terms of the settlement agreement and ultimately accepted its terms and signed the agreement. (Doc. No. 17 at 17; Kanbar Decl., Doc. No. 19-2 ¶ 16.) Accordingly, consideration of this factor weighs in favor of approval of the FLSA settlement.

    f.  *The Possibility of Fraud or Collusion*

Here, the parties assert that there is a low possibility of fraud or collusion because they "assessed the maximum penalties that [plaintiff] would have been entitled to, the settlement in the *Contreras* litigation, and provided Plaintiff the opportunity to assess the amounts allocated for his settlement and attorneys' fees when agreeing to the settlement agreement." (Doc. No. 19 at 7 (citing Kanbar Decl., Doc. No. 19-2 ¶¶ 11–15).)

In addition, there is nothing in the record before the court to suggest that plaintiff's counsel "allowed the pursuit of their own self-interests . . . to infect the negotiation." *In re Bluetooth Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). The payment for attorneys' fees and costs does not detract from plaintiff's recovery, as plaintiff will receive more than the full amount of what he would have received if he opted-in to the *Contreras* settlement. As such, this settlement lacks any evidence of more "subtle signs" of collusion, such as, for example, when counsel receive a disproportionate distribution of the settlement, or when the plaintiff class receives no monetary distribution but counsel are "amply rewarded." *Id.* at 947.

Upon considering the totality of the circumstances, as reviewed above, the court finds that the proposed settlement is fair and reasonable.

/////

### C. Attorneys' Fees and Costs

Because FLSA settlements require court approval, payment of attorneys' fees from settlement proceeds is also subject to review by the court. *See Avila v. L.A. Police Dep't*, 758 F.3d 1096, 1104–05 (9th Cir. 2014) (reviewing an award of attorneys' fees under the FLSA); *Dunn*, 2016 WL 153266, at *9 (N.D. Cal. Jan. 13, 2016) ("The Court retains the authority to determine what fees are reasonable [in an FLSA settlement]."); *Selk*, 159 F. Supp. 3d at 1180 ("Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award.") (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012)).

Here, the court will use the lodestar method to assess the reasonableness of the amount of attorneys' fees because the settlement agreement provides for payment of fees separate and apart from the amount to be paid to plaintiff, i.e., this is not a common fund case. *See Roberts v. City of Chula Vista*, No. 16-cv-1955-MMA-DHB, 2017 WL 6541105, at *6 (S.D. Cal. Dec. 21, 2017) (using lodestar method where plaintiff's counsel's "fees and costs are not coming out of plaintiffs' recovery"). Under the lodestar method, courts multiply "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgepoint Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001).

Under the terms of the settlement agreement, plaintiff's counsel will be paid $9,000 in attorneys' fees and costs. (Doc. No. 19 at 9.) In light of plaintiff's counsel's lodestar ($34,750) and expenses ($830), the parties assert that the amount of $9,000 is fair and reasonable. (*Id.* at 11.)

In calculating the lodestar, plaintiff's counsel utilized hourly rates of $400 for attorney Kerestenzis and $350 for attorney Kanbar. (Kanbar Decl., Doc. No. 19-2 ¶¶ 19–20); *see also Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13-cv-00474-DAD-BAM, 2017 WL 749018, at *8 (E.D. Cal. Feb. 27, 2017) (adopting as reasonable rates between $370 and $495 for

associates, and $545 and $695 for senior counsel and partners).  Moreover, plaintiff's counsel's lodestar shows that 97.5 hours were expended on this case.  (Kanbar Decl., Doc. No. 19-2 ¶¶ 19–20 (stating attorney Kerestenzis expended 12.5 hours and attorney Kanbar expended 85 hours).)  Accordingly, the lodestar for attorney Kerestenzis is $5,000, and the lodestar for attorney Kanbar is $29,750, which brings the total to $34,750.  (Kanbar Decl., Doc. No. 19-2 ¶¶ 19–20.)  Thus, the negotiated amount of attorneys' fees and costs of $9,000 is substantially less than counsel's lodestar amount.  In the court's view, 97.5 hours is not an unreasonable amount of time for, among other things, investigating the case, preparing court documents, holding various discussions with plaintiff, and engaging in settlement discussions.  (*See id.*)

Accordingly, the court finds the amount for attorneys' fees and costs provided for in the parties' settlement agreement is fair and reasonable under these circumstances.

**CONCLUSION**

For the reasons stated above,

1. The parties' joint stipulation (Doc. No. 17) is GRANTED;

2. The parties' settlement agreement including the amount to be paid for attorneys' fees and costs is approved as fair, adequate, and reasonable, and the parties shall perform the settlement agreement in accordance with its terms;

3. The court expressly retains jurisdiction over this action for purposes of enforcing the parties' settlement agreement;

4. Plaintiff's individual claims in this action are DISMISSED with prejudice;

5. Plaintiff's class and collective action claims are DISMISSED without prejudice;

6. This action is hereby DISMISSED; and

7. The Clerk of the Court is directed to assign a district judge for the purpose of closing the case and then to close this case.

IT IS SO ORDERED.

Dated:  **October 4, 2021**

_____
UNITED STATES DISTRICT JUDGE